


United States Courts
Southern District of Texas
ENTERED

APR 2 8 2005

Michael N. Milby, Clerk of Court



IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JOSE GUERRA,<br>    Plaintiff, | §<br>§<br>§ | |
| vs. | §<br>§ | CIVIL ACTION NO. H-04-0600 |
| HOUSTON INDEPENDENT SCHOOL<br>DISTRICT,<br>    Defendant. | §<br>§<br>§<br>§<br>§<br>§<br>§ | |

## MEMORANDUM OPINION AND ORDER

## I. INTRODUCTION

Pending before the Court is a motion for summary judgment[1] filed by the defendant, Houston Independent School District (hereinafter "HISD") (Docket No. 13). The plaintiff, Jose Guerra ("Guerra") commenced this action pursuant to 42 U.S.C. §§

---

[1] HISD's motion for summary judgment was filed timely under Fed. R. Civ. P. 6(a) and therefore, the Court overrules the plaintiff's objection.

2000e, *et seq.* (2000) ("Title VII")[2].  After filing a charge with the Equal Employment Opportunity Commission and the Texas Commission for Human Rights, Guerra received a Notice of Right to Sue on December 8, 2003.

The Court accepts jurisdiction of this matter pursuant to 28 U.S.C. § 1331 (2000). After having carefully considered the motion, response, and the applicable law, the Court is of the opinion that the defendant HISD's motion for summary judgment should be GRANTED.

## II.    FACTUAL BACKGROUND

Guerra, a Hispanic male, began his employment with HISD in August of 2001 as a bilingual teacher at J.R. Harris Elementary School.  While at J.R. Harris Elementary School, Guerra was under the supervision of Principal Jaime Castaneda and Assistant Principal Maureen Tobola, each of whom observed Guerra conduct class on at least one occasion.  His employment with HISD began unobtrusively and his work was satisfactory.  During the 2001 school year, Guerra befriended another teacher named Karen Kirk.  Guerra and Kirk conversed while at work and, at least, on one occasion outside of work.  Trouble began, however, one Saturday in the spring of 2001, when Kirk notified Guerra that she did not wish to continue their friendship.  In an effort to make amends with Kirk, Guerra sent her flowers on two occasions in the fall of 2002 and wrote her letters attempting to apologize.  Kirk, however, eventually filed a grievance against Guerra with HISD's Equal Employment Opportunity ("EEO") Office on December 4,

---

[2] Title VII, 42 U.S.C. § 2000e-2 (a)(1) provides:
It shall be an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin.

2002, in which she alleged that Guerra had engaged in unwelcomed behavior of a sexual nature towards her.  The EEO Office notified Guerra of the grievance and instructed him to "cease and desist" any inappropriate behavior toward Kirk.  In response to Kirk's complaint, on December 16, 2002, Guerra filed a grievance with HISD's EEO Office against Kirk in which he alleged race and sex discrimination.  After a separate evaluation of both Kirk's and Guerra's complaints, the EEO Office notified them that there was insufficient evidence to substantiate their allegations.

On December 16, 2002, Guerra also filed a grievance against Principal Castaneda with HISD's EEO Office in which he alleged sex discrimination.  On January 22, 2003, the EEO Office informed Guerra that there was insufficient evidence to substantiate his allegation of sex discrimination against Principal Castaneda.  Unsatisfied with the EEO Office's responses, Guerra insisted on a meeting with Josephine Morgan, manager of HISD's EEO Office, and Barbara Gupta, an EEO specialist, to discuss further his complaints against Kirk and Principal Castaneda.  Based on the January 29th meeting, Morgan dispatched a letter to Jose Trevino, superintendent of the Southeast District, recommending that Guerra be administratively transferred to another school within the Southeast District due to his excessive absenteeism during the 2002-2003 school year resulting from his experiences with a coworker at the school.  Morgan also recommended that Guerra be referred to Health and Medical Services for evaluation by qualified medical professionals based on an evaluation of Guerra during a meeting that took place on February 5, 2003 meeting.

On February 9, 2003, Guerra was transferred to Rucker Elementary School, located in the Southeast District.  Shortly thereafter, Guerra was referred to HISD's

Health and Medical Services Department, which, in turn, referred Guerra to Shelly A. Hayes, M.D.   Dr. Hayes conducted a psychological evaluation of Guerra and recommended that he continue his assignment at a campus separate from Kirk.   She further reported that although Guerra loved teaching, he was angry and resentful about his situation at Harris Elementary and was not willing to accept responsibility for the problems he was experiencing.

On March 10, 2003, HISD's EEO Office received two more complaints from Guerra in which he alleged race and sex discrimination by Principal Castaneda and Assistant Principal Tobola and retaliation by Principal Castaneda.   In these complaints, Guerra cites to ten memoranda that he received between October and December of 2002, as evidence of the gender and race discrimination as well as the retaliation committed against him.   The memoranda most relevant to this case notified Guerra of the deficiencies in his lesson plans and grade recording and provided directives for Guerra to comply with Elementary School Guidelines and HISD's policies and procedures.   These memoranda contained the phrase "Failure to follow a directive can result in termination of employment with the Houston Independent School District."   After considering the March 10th complaints, the EEO Office once again concluded that there was no evidence of race or sex discrimination against Guerra by either Castaneda or Tobola.   The EEO Office also concluded that there was neither evidence that Castaneda retaliated against Guerra, nor that Guerra was subjected to any adverse employment action.

Sometime in May 2003, HISD transferred Guerra back to Harris Elementary School.   Castaneda assigned Guerra to teach reading in the library for the last two weeks of school.   Castaneda stated that his reason for this decision was "the fact that the school

4

year was almost over and . . . to cause the least disruption to the students." Meanwhile, on May 17, 2003, Guerra applied for a teaching position with the Aldine Independent School District ("AISD").   On July 2, 2003, Guerra resigned from HISD to accept employment with AISD.

Subsequently on July 17, 2003 Guerra filed a complaint with the Texas Commission on Human Rights and the Equal Employment Opportunity Commission ("EEOC") alleging race and gender discrimination as well as retaliation by HISD.  He received notice of his right to sue on December 8, 2003.  Guerra commenced this suit on February 20, 2004, and HISD now moves for summary judgment on his claims.

### III.    CONTENTIONS OF THE PARTIES

HISD contends that summary judgment is appropriate in this case against all of the claims asserted by Guerra.  HISD contends that Guerra cannot establish a *prima facie* case of discrimination because he has failed to show that he was subjected to any adverse employment action, or that others outside his protected class were treated more favorably. With respect to Guerra's retaliation claims, HISD argues that Guerra cannot establish a *prima facie* case of retaliation because he did not engage in a protected activity nor was he subjected to an adverse employment action due to his involvement in a protected activity.

In the alternative, HISD contends that even if Guerra has produced sufficient evidence to establish a *prima facie* case of discrimination and/or retaliation, HISD has proffered legitimate and non-discriminatory reasons for their actions.  Finally, HISD contends that Guerra has failed to produce any evidence that HISD's articulated reasons are mere pretexts for intentional discrimination against Guerra.

Guerra alleges that he has been subjected to discrimination in the workplace on account of his race and gender since the beginning of his employment with HISD. Guerra contends that he has met his burden of proving a *prima facie* case of discrimination and retaliation by HISD. Specifically, Guerra contends that HISD treated him differently from his non-Hispanic, non-male counterparts as to discipline, scrutiny, and absences. Guerra alleges that he was subjected to an adverse employment action when, as a result of disparate treatment by Castaneda and Tobola, he was forced to resign his teaching position at HISD. Further, Guerra contends that his constructive discharge was due to an unreasonable and unbearable work environment.

Guerra contends that his three internal complaints filed with HISD's EEO Office constituted protected activity. Guerra alleges that after lodging the internal claims, HISD retaliated against him by transferring him to another school and ultimately forcing him to resign. Guerra further alleges that HISD's proffered reasons for its adverse employment action against him were a pretext for discrimination.

## IV.    STANDARD OF REVIEW: SUMMARY JUDGMENT

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of "informing the Court of the basis of its motion" and identifying those portions of the record "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). In adjudicating a motion for summary judgment, the Court must view all facts in the light most favorable to the non-

6

moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing *United States v. Diebold, Inc.*, 369 U.S. 654 (1962)).

Once the moving party meets its burden, the nonmoving party must "go beyond the pleadings" and designate "specific facts" in the record "showing that there is a genuine issue for trial." *Id.* at 324. An issue is "genuine" if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-49 (1986). A failure on the part of the nonmoving party to offer proof concerning an essential element of its case necessarily renders all other facts immaterial and mandates a finding that no genuine issue of fact exists. *Saunders v. Michelin Tire Corp.*, 942 F.2d 299, 301 (5th Cir. 1991).

The primary inquiry here is whether the material facts present a sufficient disagreement as to require a trial, or whether the facts are sufficiently one-sided that one party should prevail as a matter of law. *Anderson*, 477 U.S. at 251-52. The substantive law of the case identifies which facts are material. *Id.* at 248. Only disputed facts potentially affecting the outcome of the suit under the substantive law preclude the entry of a summary judgment. *Id.*

## V.   STATEMENT OF THE LAW

### A.   Legal Standard for Claims of Race and Gender Discrimination

Under Title VII, Guerra is required to prove that HISD discriminated against him by presenting a *prima facie* case through either direct or circumstantial evidence. *Davis v. Chevron U.S.A., Inc.,* 14 F.3d 1082, 1085 (5th Cir. 1994). Direct evidence consists of any statement or written document revealing a discriminatory motive on its face. *Portis v. First Nat'l Bank of New Albany, MS*, 34 F.3d 325, 329 (5th Cir. 1994). "Direct

7

evidence is evidence, which, if believed, proves the fact [of intentional discrimination] without inference or presumption." *Id.* at 328-29 (quoting *Brown v. E. Miss. Elec. Power Ass'n*, 989 F.2d 858, 861 (5th Cir. 1993). In this case, Guerra has alleged discrimination based only on circumstantial evidence.

In the absence of direct evidence of discrimination, the plaintiffs must follow the burden-shifting requirements of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973). To survive a motion for summary judgment under the test set out in *McDonnell Douglas*, the plaintiff carries the initial burden of establishing a *prima facie* case of discrimination. *Id.* If the plaintiff meets this burden, the burden of persuasion shifts to the employer to set forth "some legitimate, nondiscriminatory reason" for its challenged action. *Id.* Once the employer meets its burden of production, the plaintiff must then be given the opportunity to show that the employer's stated reason was in fact a pretext for discrimination. *Id.* at 804; *see also St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 507-08 (1993). Nonetheless, "the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *St. Mary's Honor Ctr.*, 509 U.S. at 507. In order for the plaintiff to establish a *prima facie* case of race and gender discrimination, the plaintiff must demonstrate that: (1) he is a member of a protected class; (2) he was qualified for the position that he held; (3) he was subjected to an adverse employment decision; and (4) that similarly situated employees, outside his protected group, were treated more favorably. *Ward v. Betchel Corp.*, 102 F.3d 199, 202 (5th Cir. 1997).

Title VII was designed to address ultimate employment decisions. *Dollis v. Rubin*, 77 F.3d 777, 781-82 (5th Cir. 1995). "Ultimate employment decisions," include

acts such as hiring, granting leave, discharging, promoting and compensating. *Mattern v. Eastman Kodak Co.,* 104 F.3d 702, 707 (5th Cir. 1997). Under Title VII, a resignation is actionable as an adverse employment action only where that resignation amounts to constructive discharge. *Brown v. Kinney Shoe Corp.,* 237 F.3d 556 (5th Cir. 2001). Constructive discharge occurs when an employee has quit her job under circumstances that are treated as an involuntary termination of employment. *Young v. Southwestern Sav. & Loan Ass'n,* 509 F.2d 140, 144 (5th Cir. 1975). In order to establish constructive discharged, a plaintiff must prove that his working conditions were so difficult or unpleasant that a reasonable employee in his shoes would have felt compelled to resign. *Cortes v. Maxus Exploration Co.,* 977 F.2d 195, 200 (5th Cir. 1992) (quoting *Landgraf v. USI Film Prods.,* 968 F.2d 427, 429 (5th Cir. 1992)). The burden is on the employee to prove constructive discharge. *Boze v. Branstetter,* 912 F.2d 801, 804-05 (5th Cir. 1990). To prove constructive discharge, the plaintiff must demonstrate a greater severity or pervasiveness of harassment than the minimum required to prove a hostile working environment. *Pittman v. Hattiesburg Munic. Sch. Dist.,* 644 F.2d 1071, 1077 (5th Cir. 1981) ("plaintiff must demonstrate that the working conditions were intolerable and unreasonable").

### B.     Legal Standard for Claims of Retaliation

Title VII provides in relevant part that "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has made a charge . . . under this subchapter." 42 U.S.C. § 2000e-3(a). A retaliation claim has three elements: (1) the employee engaged in activity protected by Title VII; (2) the employer took adverse employment action against the employee; and (3) a causal

connection exists between that protected activity and the adverse employment action. *Mattern,* 104 F.3d at 705. An employee has engaged in activity protected by Title VII if he has either (1) "opposed any practice made an unlawful employment practice" by Title VII or (2) "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under Title VII. 42 U.S.C. § 2000e-3(a). To demonstrate causation, an employee must show that "but for" the protected activity, the adverse employment action would not have taken place. *Seaman v. CSPH, Inc.,* 179 F.3d 297, 301 (5th Cir. 1999).

The burden-shifting structure applicable to Title VII disparate treatment cases, as set forth in *McDonnell Douglas,* is applicable to Title VII unlawful retaliation cases. *Haynes v. Pennzoil Co.,* 207 F.3d 296 (5th Cir. 2000). Therefore, once the plaintiff establishes a prima facie case, the burden of production shifts to the defendant to articulate legitimate, non-retaliatory reasons for the adverse employment action. *Id.* If the defendant introduces evidence, which, if true, would permit the conclusion that the adverse employment action was non-retaliatory, the focus shifts to the ultimate question of whether the defendant unlawfully retaliated against the plaintiff. *Id.*

## VI.   ANALYSIS AND DISCUSSION

### A.   Guerra's Claims of Race and Gender Discrimination

The parties do not dispute the fact that Guerra, a Hispanic male, is a member of a protected class. Additionally, the parties are not in dispute as to whether Guerra was qualified to be a bilingual teacher at an elementary school within HISD. However, the issue of whether Guerra was subjected to an adverse employment action by HISD is in dispute. Guerra contends that his constructive discharged resulted from an unbearable

and unreasonable work environment created by HISD.   Guerra contends that the following actions taken by HISD resulted in an "unbearable and unreasonable" work environment: (1) being repeatedly threatened with termination; (2) being hounded and excessively watched; (3) being stripped from his classroom; (4) being transferred to another school; and  (5) being made to show cartoons to students.  In short, Guerra argues that he has set forth facts that would have made any reasonable employee feel compelled to resign.  The Court disagrees with Guerra's conclusion.

Guerra, according to the record, received a substantial number of memoranda during a short period of time.   Certain memoranda expressed termination within the context of Guerra failing to comply with directives set forth by HISD.  The memoranda directed Guerra to comply with HISD's policies and procedures with regard to grading methods and lesson plans.  Specifically, on October 22, 2002, the teachers at Harris Elementary were sent a memorandum regarding lesson plan requirements.  Subsequently, on November 21, 2002, Castaneda sent Guerra a memorandum notifying him that his lesson plans for the week of November 18th did not comply with the enunciated lesson plan requirements.  At the close of the November 21st memorandum Castaneda wrote the following: "Failure to follow a directive can result in termination of employment with the Houston Independent School District."  According to *Cortes,* 977 F.2d at 200, a plaintiff must prove that his working conditions were so difficult or unpleasant that a reasonable employee in his shoes would have felt compelled to resign.  Accordingly, the Court finds that Castaneda's labors to maintain Guerra's compliance with HISD's policies and procedures could not have been viewed as creating a difficult or unreasonable working environment to a reasonable employee in Guerra's position. *Boze*

*v. Branstetter*, 912 F.2d 801, 805-06 (5th Cir. 1990) (resigning employee who suffered a poor performance evaluation and loss of responsibilities similar to a demotion had failed to demonstrate a constructive discharge).

Next, Guerra argues that Castaneda and Tobola "hounded and excessively watched him." Specifically, on February 3, 2003, Guerra claims that both Castaneda and Tobola sat in the back of his classroom and "stared" at him for about thirty minutes. A review of the record reveals that the presence of Castaneda and Tobola in Guerra's classroom that day was in response to Guerra having 29% of the school's discipline referrals[3] since December of the previous year. Guerra claims that his non-Hispanic, non-male counterparts were not subjected to being "watched" by Castaneda and Tobola in the same manner as he was. However, Guerra admits, in his deposition, that he has no actual knowledge of whether Castaneda or Tobola "watched" any other teacher's classroom on that day or any other day. In this situation, it is unreasonable for Guerra to have viewed the half-hour presence of the principal and assistant principal as being intolerable or for the purposes of harassment. *McKethan v. Texas Farm Bureau*, 996 F.2d 734, 741 (5th Cir. 1993) (resigning employee's embarrassment after being singled out and admonished at an awards banquet was not sufficient to show constructive discharge).

Last, Guerra argues that being stripped from his classroom and subsequently transferred mid-semester to Rucker Elementary School added to the intolerable nature of his working environment. In *Wilson v. Monarch Paper Co.,* 939 F2d 1138, 1145 (5th

---

[3] According to HISD's Student Code of Conduct much of a student's behavior can be managed by the classroom teacher. However, HISD sets forth a system whereby a student's level of misbehavior can be placed into one of five levels of conduct. A teacher who observes a student engaged in level II or higher misconduct must fill out a referral form with the principal.

Cir. 1991), the Court held that the plaintiff, a college graduate, who was reassigned to janitorial duties had demonstrated constructive discharge on the part of the employer and was, therefore, entitled to recover under Title VII. In contrast to the plaintiff in *Wilson*, although Guerra's job responsibilities were temporarily diminished, his job description and salary were not affected. Furthermore, HISD's efforts to remove the source of Guerra's symptoms (i.e. Kirk) by transferring him while at the same time retaining his status as a bilingual teacher with HISD appear to have been in Guerra's best interest.

Josephine Morgan, manager of HISD's EEO Office, recommended that Guerra be transferred to Rucker Elementary School because of his excessive absenteeism, found to be directly related to his experiences with Kirk. Guerra's arrival at Rucker Elementary School mid-semester resulted in him being assigned to work in the library and to assist other teachers as necessary. In February of 2003, Dr. Hayes conducted a psychological evaluation of Guerra in which he claimed to be suffering from symptoms of depression, frustration, anger and sleeplessness as a consequence of his experiences with Kirk. Dr. Hayes recommended that Guerra continue his assignment at a campus separate from Kirk.

In this case, Guerra has not provided sufficient evidence to prove that his transfer to another elementary school within HISD created an intolerable and unreasonable working environment such that a reasonable employee would have felt compelled to resign. *Brown v. Bunge Corp.,* 207 F.3d 776, 782-83 (5th Cir. 2000) (resigning employee who was demoted and had fewer job responsibilities had failed to prove constructive discharge); *Hunt v. Rapides Healthcare System, LLC,* 277 F.3d 757, 772 (5th Cir. 2001) (resigning employee who was placed on a different shift accompanied by a loss in

compensation and benefits had not proven constructive discharge).  Assuming the facts in a light most favorable to Guerra, the Court concludes that his working conditions were not so intolerable that a reasonable employee in his shoes would have felt compelled to resign.  Guerra has failed to prove a *prima facie* case of discrimination.  Therefore, the Court concludes that Guerra's claims based on race and gender discrimination fail as a matter of law.

### B.    Guerra's Retaliation Claim

Guerra alleges that he engaged in protected activity when he filed the three internal complaints with HISD's EEO Office.  The Court presumes that Guerra had in fact engaged in protected activity when he filed the internal complaints with HISD's EEO Office.[4]

HISD argues that even if Guerra had in fact engaged in protected activity, there was no resulting adverse employment action taken against him.  Guerra argues that both his transfer from Harris Elementary on February 3, 2003, and his ultimate resignation from HISD were adverse employment actions taken against him by HISD due to his filing the internal claims.  Although an employee's transfer to another work site does not amount to an adverse employment action, *Dollis,* 77 F.3d at 781-82 (ultimate employment actions such as hiring, granting leave, discharging, promoting and compensation), a resignation may be if constructive discharge is proven. *Barrow v. New Orleans Steamship Ass'n,* 10 F.3d 292, 297 (5th Cir. 1004).  Having previously ruled

---

[4] In its motion for summary judgment HISD proffers a relatively novel issue with regard to the reasonableness of a plaintiff's complaints arguing that objectively unreasonable complaints are not entitled to protection under Title VII.  Given the sparse case law on the issue, the Court relies on alternative legal grounds for dismissing the plaintiff's complaint.

against Guerra on the issue of constructive discharge in this case, the Court finds that HISD did not impose an adverse employment action upon Guerra.

Guerra has failed to establish that he suffered an adverse employment action. Accordingly, Guerra failed to prove a *prima facie* case of retaliation under Title VII. Therefore, the Court finds that Guerra's claim based on retaliation should be dismissed as a matter of law.

## VI.    CONCLUSION

In light of the foregoing discussion and analysis, it is the judgment of the Court that the defendant HISD's motion for summary judgment be hereby GRANTED.

It is so ORDERED.

Signed this 27th day of April, 2005.

KENNETH M. HOYT
United States District Judge